UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:

CHUZA OIL COMPANY, INC.                                   Case No. 14-12842-t11

Debtor.


### MOTION BY OFFICIAL UNSECURED CREDITORS' COMMITTEE TO APPOINT A "RESPONSIBLE OFFICER" OF DEBTOR, AN EXAMINER WITH EXPANDED POWERS, OR TRUSTEE UNDER 11 U.S.C. § 1104 AND §1107 AND §105 OF THE BANKRUPTCY CODE

TO THE HONORABLE DAVID T. THUMA, UNITED STATES BANKRUPTCY JUDGE:

Comes now, the Official Unsecured Creditors' Committee (the "Committee") a party in interest in this Chapter 11 proceeding, by and through its attorney of record, James & Haugland, P.C., a professional corporation, and files this, its Motion to Appoint a "Responsible Officer" of Debtor, an Examiner With Expanded Powers, or Trustee Under 11 U.S.C. § 1104, and would respectfully show the Court as follows:

1.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334 and 11 U.S.C. §§ 105 and 1104.  Bankruptcy Rule 9014 is applicable to this Motion.

2.      On or about September 24, 2014 ("Petition Date"), Chuza Oil Co., Inc. (the "Debtor") filed a Petition herein under Chapter 11 of the Bankruptcy Code.  The Debtor operates oil wells in San Juan County, New Mexico.

3.      Since the Petition Date, the Debtor has conducted business as a Debtor in Possession under 11 U.S.C. §§ 1107 and 1108.

4.     On or about November 18, 2014, the United States Trustee appointed the Unsecured Creditors' Committee (the "Committee") in this case [Doc. No. 39].    The Committee made application to hire the firm of James & Haugland, a Professional Corporation ("J&H") on November 26, 2014 [ Doc. No. 52].  On November 20, 2014, James & Haugland, P.C. was hired as attorneys for the Committee.  The Debtor has objected to the Committee's employment of J&H [Doc. No. 78].

5.     The Debtor filed its initial Schedules [Doc. No. 1] and Statement of Financial Affairs ("SOFA") on September 24, 2014 [Doc. No. 1].

6.     The Debtor subsequently amended the Schedules [Doc. No. 44] and SOFA [Doc. No. 43] on November 20, 2014.

## MAJOR PLAYERS

7.     The Debtor's Chief Executive Officer (CEO) – not an official corporate officer – is Bobby Goldstein [Petition Doc. No. 1].  Bobby Goldstein is a 70% shareholder of the Debtor.

8.     Bobby Goldstein is alleged to be a $100,000 creditor of the Debtor on Schedule F of the Amended Schedules.

9.     Upon information and belief, Bobby Goldstein also manages and/or owns additional entities which do business with the Debtor – Cheaters Spy Shop ("CSS") and Bobby Goldstein Productions, Inc. ("BGPI").

10.    While acting as the Debtor's CEO pre and post-petition, Bobby Goldstein actively manages and operates the following additional entities:

a.     Goldstein/Habeeb/McCalmont Entertainment, Inc;

b.     Cheaters Detective Agency, LLC;
c.     Cheaters International, Inc.; and
d.     Testing One Two, LLC.

2

Until their recent dissolution, Bobby Goldstein also managed these corporate entities:

    a.      BGPI/Gable Reality Productions, LLC
    b.      Don't Get It On, LLC;
    c.      Iaccuse, LLC;
    d.      NRG Technicians, LLC*

*Company President was Patrick Padilla, President of Chuza Oil Co., New Mexico. NRG is listed on the schedules as an entity owing the Debtor $443,277.92.*

11.     Prior to launching his career in corporate management, Bobby Goldstein was a licensed trial attorney in the State of Texas. According to the State Bar of Texas website, Goldstein has been disbarred (see attached Exhibit "A").

12.     Bobby Goldstein has caused the Debtor to become liable for the debts related to his private jet aircraft [SOFA Doc. No. 1 and Amended SOFA Doc. No. 43].

13.     Leon Goldstein is Bobby Goldstein's father. The Amended Schedules show Leon Goldstein to be a $500,000.00 unsecured creditor. Leon Goldstein has engaged in numerous alleged "loan" transactions with the Debtor through his son during the past two (2) years. Leon Goldstein has filed a Secured Proof of Claim in the amount of $548,000.00 [Claim No. 16]. Only one promissory note, with no date, is attached to the Proof of Claim. Leon Goldstein is a 6% shareholder of the Debtor.

14.     Joyce Sellars ("Sellars") is a 5.22% shareholder of the Debtor. Sellars is listed as a $300,000.00 secured creditor on the basis that she purchased the "secured" debt of Green Bank, N.A. on June 20, 2014. Green Bank, N.A. did not have a perfected security agreement or security interest in the Debtor's cash accounts, or personal property. (See attached UCC-1 Search for New Mexico, attached as Exhibit "B"). Despite not acknowledging payments to Sellars within ninety (90) days of the Petition Date on the SOFA, the Debtor actually paid her $14,000.00 on July 23, 2014 and

3

$28,000.00 the week before the Chapter 11 filing (September 17, 2014), the check clearing post-petition on September 29, 2014 (check #12319)*. (*The check #12319 came from the Debtor's pre-petition operating account at Plains National Bank. The account was not closed on the Petition Date as required by the Bankruptcy Code. A $28,000.00 payment from the DIP account at Wells Fargo (check #1021) was made to Joyce Sellars on October 31, 2104.)

15.     The Committee believes that the Debtor is unable to effectuate a confirmable plan of reorganization and that the creditors of this Estate will not only experience unreasonable delay which is prejudicial to their interests, but also expect that the future will bring no relief from this continued course of action by the Debtor.

## OPTIONS

16.     Authority for the Court to correct lack of management, and place an independent representative in the Debtor exists under at least three Bankruptcy Code provisions: First, Section 1104(a) which authorizes the appointment of a Trustee where it is in the interest of creditors or the estate; second, Section 1104(c) which authorizes the appointment of an examiner "with expanded powers" which case law has prescribed to fit the present situation; and Section 105 of the Code which allows the Court, even *sua sponte*, to take appropriate actions to enforce or implement Court orders designed to carry out the provisions of Chapter 11 or to prevent abuse; third, the appointment or designation of a "responsible officer" with authorization to act for the Debtor in Possession where something less than the outright appointment of a Trustee may be appropriate. In the case of *In re FSC Corp.*, 38 B.R. 346 (W.D. Penn. Bktcy. 1983), the Bankruptcy Court designated a "responsible officer." The appointment of a similar type of responsible officer has also met with approval by Bankruptcy Courts in the Northern District of Texas in at least two known instances: first, *In re*

4

*Property Company of America*, 110 B.R. 244, 246 (N.D. Texas Bankr. 1990) where the Court appointed Jack R. Stone as the Debtor's interim chief executive officer and <u>second</u> in one of the *Zale Corp.* subsidiaries where the Court appointed Richard Holmes (head of the restructuring operations of Arthur Andersen & Company) as a responsible officer.

17.    Another alternative is an examiner with expanded powers. The Ninth Circuit, *In re Boileau*, 736 F.2d 503, 506 (1984), approved such an examiner in order to avoid the designation of a Trustee. In that instance, the examiner was "empowered to perform a myriad of functions normally carried out by a trustee."

18.    Sections 105(a) and 1107(a) also authorize Bankruptcy Courts to "interfere with the management of a debtor corporation in order to protect the creditors' interest." *In re Gaslight Club, Inc.*, 782 F.2d 767, 770 (7th Cir. 1986).   Although the sole shareholder in this case is likely to not agree with the installation of new management or a "responsible officer," the Committee submits that such is needed in order to protect their interests in light of current management's failure to collect the promissory notes from affiliates of the Debtor or propose a confirmable Plan that either requires current equity to inject new funds in order to retain his equity position, or transfer the corporation's equity to the unsecured creditors/liquidating trust for the unsecured creditors. The examiner with expanded powers or responsible officer will "level the playing field" and provide a quicker resolution of this Chapter 11 case.

19.    The Committee moves for an appointment of a responsible officer under Section 1103 of the Code, a trustee under Section 1104(a) or an examiner under Section 1104(c). Such a person could consider and pursue (a)completion of the reconciliation of debt with Guizot, LLC; (b) pursue DIP financing for continued operations; (c) obtain additional properties to operate and increase the

5

revenue stream if possible, under the Guizot Participation Agreement; (d) pursue investors as a means of raising capital for the continued operation of the corporation; and/or (e) pursue investors as a means of obtaining liquidity for payment of secured and unsecured creditors. Rather than have their fate dictated to them by the equity holder who refuses to pay his debts to the corporation and proposes to retain the equity in the corporation, the Committee desires and independent party who would act as a fiduciary for their interests and independent of the Debtor's current equity holder.

20.     The Amended SOFA filed November 20, 2014 [Doc. No. 43] reflects that the Debtor lost $2,584,460.00 from operations during 2013. The 2013 tax return [Doc. No. 69] filed by the Debtor reflects a similar loss.

21.     Financial anomalies abound in the Schedules and SOFA once the comparison is made to the 2013 tax return. These documents show a habitual pattern of payment to insiders at the expense of unsecured creditors.

## INSIDER TRANSACTIONS

22.     The 2013 tax return reflects a trade debt owed to another Bobby Goldstein company (BGPI) of $214,025.00 on December 31, 2013. The Debtor's Amended SOFA indicates a debt of $214,024.58 owed to BGPI on December 31, 2013. At a point in time when the Debtor owed unsecured creditors hundreds of thousands of dollars the Debtor paid BGPI in full on April 11, 2014.

23.     The 2013 tax return shows that Guizot, LLC was owed $1,077,183.00 on December 31, 2013. Upon information and belief obtained through review of the Debtor's Schedules and SOFA, no amount has been paid back.

24.     The Debtor paid Leon Goldstein $50,000.00 on September 15, 2014 and $78,989.93 to Bobby Goldstein the next day, September 16, 2014. Presumably, these transactions were

6

completed with the knowledge of the Debtor's attorneys. (Attorney William Davis was paid $15,000.00 on August 20, 2014. This amount is the sum disclosed on attorney Davis' Rule 2019 Disclosure).

25.    According to the Debtor's books and records, the Debtor allegedly "owed" Leon Goldstein $500,000.00 from prior shareholder loans on December 31, 2013. There is a purported promissory note for one or more of these "borrowings". The Debtor and Leon Goldstein engaged in a series of financial transactions during 2014. The result of the 2014 dealings with Leon Goldstein was the Debtor's obtaining (allegedly) of $190,000.00. There is no promissory note for the 2014 transactions.

26.    The Debtor previously obtained $200,000.00 from Leon Goldstein. The money was treated as a contribution and not a loan. No promissory note exists for the $190,000.00 Leon Goldstein debt, the UCC submits that this amount is not a loan at all.

27.    The SOFA indicates the Debtor "borrowed" $58,500.00 on August 7, 2014 from On Deck Capital. (THE DAILY fee on the loan was $585.71.) On Deck Capital's loan is not listed on Schedule D or Schedule F as a "creditor". In reality the borrower was a Bobby Goldstein company.

28.    Post-petition "insider" deals continued unabated. Following the September 24, 2014 Chapter 11 filing the Debtor paid BGPI $9,500.00 on October 7, 2014 (at a time when the account payable was only $2,184.33). The next day, the Debtor entered into a loan transaction with BGPI where it borrowed $1,000.00. Two days later, October 10, 2014, there was another $9,500.00 borrowing by the Debtor from BGPI. At that point, the Debtor allegedly owed $3,184.33 to BGPI. BGPI is not listed as a creditor on Schedule D or Schedule F. The post-petition loan transactions were not approved by the Bankruptcy Court.

7

## CREDITOR ANIMOSITY - BAKER HUGHES

29.     During April 2014, Baker Hughes supplied materials and/or performed services on the Debtor's lease, Hogback #74H and the well Hogback NE Unit #74 (STG 3).

30.     The Debtor executed Field Receipt Tickets for each and every supply of services or materials by Baker Hughes (See Claim No. 14).

31.     The Debtor was billed for those services or materials.  The Debtor was obligated to pay for these services or materials within thirty (30) days – *i.e.* May 2014.

32.     The Debtor failed to pay for these services or materials prior to filing the Chapter 11 case on September 24, 2014.

33.     <u>New Mexico Oil and Gas M&M Lien Law</u>.  New Mexico's Oil and Gas Lien Act provides that vendors who furnish materials or services for oil and gas well owners at such owners' oil or gas wells hold liens to secure payment for the materials and services the vendors provided ("M&M Liens"). *N.M. Stat. Ann. § 70-4-1.*  M&M Liens (i) "attach as of the date on which the first of the materials, tools, machinery, equipment or supplies [were] furnished or hauled, or the first of the labor is performed" and (ii) encumber the:

> whole of the land, oil and gas permit, leasehold, lease for oil and gas purposes, oil pipeline, gas pipeline, or gasoline pipeline, and right-of-way therefor, the buildings and equipment thereon, and the appurtenances thereto, ***the proceeds from the sale of oil and gas produced therefrom inuring to the working interest***, and upon the materials, tools, machinery, equipment and supplies furnished or hauled, and upon the oil and gas well for which they are furnished or hauled, and upon all the other oil and das wells, fixtures, machinery, tools, equipment and appliances, used or employed in operating or developing, for oil and purposes, upon the land, oil and gas permit, leasehold, or lease for oil and gas purposes...[and any other property provided for in the statute].

*Id. (emphasis added).*  In order to perfect M&M Liens –

8

[e]very original contractor, within two hundred ten days after the performance fo the last labor of the furnishing of the last item of material, tools, machinery, equipment or supplies, and every person, except the original contractor, claiming the benefits of the Oil and Gas Lien Act ... within one hundred eighty days after the performance of the last labor of the furnishing or hauling of the last item or material, tools, machinery, equipment or supplies shall file for record with the county clerk of the county in which the property upon which the lien is claims or situated, a claim setting for the name and residence of the claimant, the amount and the items claimed, the name of the person to whom the materials, tools, machinery, equipment or supplies were furnished or hauled or for whom the labor was performed, the name of the owner and a description of the property upon which the lien is claimed, verified by affidavit.

*N.M. Stat. Ann. § 70-4-4.*

34.    Upon information and belief, Baker Hughes is owed $625,133.36 plus costs and attorneys fees.  The Debtor's Schedules filed September 24, 2014 [Doc. No. 1 at page 6] estimate the value of lease/well upon which Baker Hughes has a lien at $548,842.00.

35.    Consequently, on the Petition Date, Baker Hughes was <u>BOTH</u> a secured creditor and unsecured creditor.

36.    The Debtor's Schedule F filed September 24, 2014 [Doc. No. 1] listed Baker-Hughes unsecured claim was listed at $575,525.28.  (The claim was NOT listed as disputed, contingent or unliquidated.)  The Debtor failed to schedule Baker-Hughes' secured claim on Schedule D.

37.    The Debtor did not file a Motion to Use Cash Collateral on the Petition Date.

38.    Baker-Hughes filed its Notice of Perfection of Lien Pursuant to 546(b) on November 12, 2014 [Doc. No. 34].

39.    The Section 341 Meeting was held on October ___, 2014.  Baker Hughes appeared at the Section 341 Meeting and was represented by Counsel.  Baker Hughes indicated an interest to the US Trustee for the formation of the UCC.

9

40.     The Debtor did not file a Motion to Use Cash Collateral until November 18, 2014. Baker-Hughes was appointed to the Official Unsecured Creditors Committee by the United States Trustee on November 18, 2014 [Doc. No. 39].

41.     In an attempt to inhibit or eliminate the role of the Official Unsecured Creditor's Committee ("UCC"), the Debtor filed its Amended Voluntary Petition on November 20, 2014 [Doc. No. 42] claiming to be a small business debtor.

42.     The Debtor also amended Schedule F on November 20, 2014 to dispute Baker Hughes unsecured claim [Doc. No. 44]. The Debtor did not list Baker Hughes' secured claim on Schedule D, despite the clear application.

43.     Almost two months into the case, the Debtor filed its Motion to Use Cash Collateral [Doc. No. 40] on November 18, 2014. Baker Hughes filed its Objection to Motion to Use Cash Collateral on December 2, 2104 [Doc. No. 57 and 58]. The Motion to Remove Baker Hughes from the UCC followed two (2) days later, December 4, 2014. [Doc. No. 71]. The Objection to the UCC selection of attorneys based upon misconduct by the UCC Chairman (Baker Hughes) was filed on December 15, 2014 [Doc. No. 78].

44.     UCC filings include:

| | | | | |
|---|---|---|---|---|
| 1) | Objection to Amended Petition | 11/26/14 | [Doc. No. 54] |
| 2) | Objection to Motion to Assume Lease | 11/26/14 | [Doc. No. 55] |
| 3) | Objection to Use of Cash Collateral | 11/26/14 | [Doc. No. 56] |
| 4) | Objection to Motion to Assume Lease | 12/04/14 | [Doc. No. 63] |
| 5) | Motion to Compel Operating Reports | 12/04/14 | [Doc. No. 64] |

The Motion to Remove Baker Hughes was filed 12/04/14 [Doc. No. 71].

Case 14-12842-t11   Doc 89   Filed 12/24/14   Entered 12/24/14 10:05:44 Page 10 of 36

45.     The Motion to Remove Baker Hughes [Doc. No. 71] and the Objection to Employment of J&H [Doc. No. 78] contain patent and glaring misrepresentations by the Debtor that clearly evidence the animosity toward Baker Hughes.  Despite representations under penalty of perjury that Banker Hughes is an unsecured creditor[ Doc. No. 1 and Doc. No. 44, page 8 and Doc. No. 45, page 3], the Debtor now states to this Court that Baker Hughes is a fully secured creditor [Doc. No. 71, pages 2-4].  Yet, under penalty of perjury, the Debtor does not list Baker Hughes on the Amended Schedule D filed November 20, 2014 [Doc. No. 44 and 45].

46.     In these same filings, Documents 71 and 78, the Debtor represents to this Court that value of its assets has risen over $250,000.00 in the two (2) months since the Petition Date.  The Debtor has acquired no new assets and has, in fact, been depleting assets it does have (oil production) and utilizing equipment without replacement or refurbishment.  The only purpose for these filings by the Debtor is to counter Baker Hughes' status as an unsecured creditor by claiming it to be oversecured and counter Baker Hughes Objection to Use of Cash Collateral.

47.     BUT, the Debtor is not finished with its misrepresentations to this Court.  The Debtor represents to this Court that its unsecured debt totals $1,970,597.31 [Doc. No. 1] and has remained static since the Petition Date [Doc. No. 44].  The number of unsecured creditors in both cases is nine (9).  In order to delay the filing of a plan of reorganization by the UCC or a Baker Hughes creditor plan of reorganization, the Debtor has "changed" its Petition to a "small business debtor" to obtain a new exclusivity date of March 23, 2015.  The present exclusivity period ends January 22, 2015.  To accomplish this goal, Guizot, LLC and Guizot, LLV JV were completely left off Schedule F originally [Doc. No. 1] and in its amended version filed November 20, 2014

11

[Doc. No. 44]. **According to the Debtor's 2013 tax return filed by the Debtor [Doc. No. 69],**
**Guizot, LLC or Guizot LLC JV is owed $1,077,183.00.**

48.     Inclusion of Guizot, LLC or Guizot, LLC JV as a creditor prevents an honest "small
business debtor" designation filing.  Without "small business debtor" status, the Debtor could not
delay the initial exclusivity date of January 22, 2015.

## CREDITOR ANIMOSITY - GUIZOT, LLC

49.     As noted above, the Debtor's 2013 tax return [Doc. No. 69] shows a debt of
$1,077,183 to Guizot, LLC, JV.  All of this debt was incurred during 2013.

50.     The Debtor fails to lost the joint venture interest at any place on the Amended
Schedule B [Doc. No. 44].  The Debtor merely notes on the Amended Schedule B, item 21, that
it is entitled to a $166,000.00 setoff.

51.     The Debtor fails to list GUizot, LLC as a Schedule F creditor on the Amended
Schedules.

52.     From the Debtor's own documents it is easy to discern that Guizot, LLC is a
creditor and that amount should be, at least, $911,183.00.

53.     Logically, the only reason to ignore Guizot, LLC is to force the creditor to expend
attorneys fees to establish its claim and then leverage those litigation costs.

54.     Were the Debtor's intentions honest, it would have immediately (on the Petition
Date) filed an adversary proceeding under Bankruptcy Rule 7001(2) to determine the extent of the
Debtor's interest int eh joint venture, and determine whether the Guizot, LLC interest or debt is
secured by a lien of any type.

12

## INSIDER FAVORITISM

55.     BGPI was shown to be owed $214,025.00 on the Debtor's 2013 tax return [Doc. No. 69]. The Debtor's Amended Schedule F [Doc. No. 44] does not list BGPI as an unsecured creditor. BGPI is an "affiliate" and "insider" of the Debtor under Section 101 of the Bankruptcy Code. BGPI was paid in full during 2014 at a point in time when the Debtor's undisputed unsecured creditors exceeded $1,250,000.00.

56.     Reaching back two (2) years prior to the Petition Date, "insiders" of CHuza and relatives or affiliates of Bobby Goldstein were paid the following amounts:

| | | |
|---|---|---|
| (a) | Bobby Goldstein | $1,484,029.38 |
| (b) | Leon Goldstein | $598,750.00; |
| (c) | CSS | $193,656.28; and |
| (d) | BGPI | $1,357,189.32 |

57.     Although these amounts include "loan re-payments" the UCC does not believe that contemporaneously executed negotiable instruments were obtained by the Debtor evidencing the "loan" for which a payment was being made.

58.     The Debtor's Schedule B does not list causes of action to recover some or all of these funds – although the Debtor has avoidance powers reaching back four (4) years.

59.     It should also be noted that the Debtor has been paying loans on which Bobby Goldstein is listed as a co-debtor (Amended Schedules [Doc. No. 44] at page 19).

60.     Another example if this favoritism – at the expense fo payments to unsecured creditors – is related to a Bobby Goldstein company names NRG Technicians. See pages 17 and 18 of Amended Schedules [Doc. No. 44]. NRG "leases" trucks – albeit no written lease – to the

Debtor and the Debtor makes the payment to Ally Financial. However, the trucks are really Bobby Goldstein's (NRG Technicians was dissolved November 15, 2014.) The Debtor has not equity in these vehicles and doesn't really need the vehicles to conduct its business.

## VIOLATIONS OF BANKRUPTCY CODE - SCHEDULES

61. The Debtor has filed false, or at least inaccurate, Schedules and other documents on two (2) occasions. The inaccuracies include:

(a)  failure to list Guizot, LLV or Guizot, LLC JV as a $1,077,183.00 unsecured creditor or a $911,183.00 unsecured creditor on Schedule F [Doc. No. 44];

(b)  listing Joyce Sellars as a secured creditor on the Debtor's personal property when proper security agreements and/or UCC-1's have not been filed by Sellars or Green Bank;

(c)  failure to list Guizot, LLC or Guizot, LLC JV as a current liability on its Balance Sheet [Doc. No. 67];

(d)  failure to accurately list amounts payable to the IRS on Schedule E;

(e)  failure to accurately list the Debtor's investment in Guizot, LLC JV on Schedule B ($1), not listed on the Amended Schedule B and negative $1,243,908.63 on Balance Sheet [Doc. No. 67]; and

(f)  failure to accurately list the Debtor's bank balances ($8,515.09 on Doc. No. 61 vs. (-) $62,435.57 on Doc. No. 67). The Debtor's Schedule B and Amended Schedule B reflect a $1,000.00 balance in the Plains Capital Bank on September 24, 2014. The Debtor's Balance Sheet reflects a negative balance of $62,435.67 in that account on September 30, 2014 – 6 days later. Furthermore, the checks were written without authorization to use cash collateral required by the Bankruptcy Code Section 363.

14

62.     A failure to provide accurate Schedules to the court has been deemed sufficient "cause" under Section 1104(a)(1) for the appointment of a Chapter 11 Trustee. * *In re Plaza de Retiro, Inc.*, 417 B.R. 632, 641 (Bankr. N.M. 2009). * *William F. Davis, Debtor's counsel herein, served as counsel for the debtor in* <u>Plaza de Retiro</u>.

63.     The Debtor essentially hid its operations from the creditors for nearly two (2) months.  Local Bankruptcy Rules require the filing of Monthly Operating Reports ("MOR") on or before the 15th day of the following month.  The MOR for September 2014 was due October 15, 2014.  The September 2014 MOR was filed December 3, 2014 [Doc. No. 61].

64.     The Section 341 Meeting was held October 23, 2014.

65.     The October 2014 MOR was due for filing on November 15, 2014.  The October 2014 MOR [Doc. No. 62] was filed December 3, 2014.

66.     The UCC filed its Motion to Compel MOR Filing December 4, 2014 [Doc. No. 64] almost simultaneously with the Debtor's MOR filings.

67.     However, the UCC Motion has been ignored.  At the time of the preparation of this Motion (December 19, 2014) the Debtor had not filed its November MOR.

68.     The repeated failure to timely file MORs is grounds for appointment of a Chapter 11 Trustee.  *In re Nautilus of New Mexico, Inc.*, 83 B.R. 784, 791 (Bankr. N.M. 1988).

### GROSS MISMANAGEMENT

69.     The Debtor's management repeatedly incurred overdraft fees during 2014 prior to the Chapter 11 filing.

70.     "Bouncing checks is gross mismanagement."  Gross mismanagement is a "cause" for appointing a Chapter 11 Trustee.  *In re Plaza de Retiro*, *Id* at 643.

15

71. Gross mismanagement is further evidenced by the "carte blanche" attitude by the Debtor toward payment of its post-petition legal bills. Debtor's counsel was employed, by this Court's order, pursuant to an engagement letter referencing a $300/hr rate for William Davis and a lesser amount for junior attorneys [Doc. No. 28]. This Order provided for payment of seventy-five percent (75%) of the monthly statement's fees and one hundred percent (100%) of the cost and expenses. The MOR-5 for the October Monthly Operating Report [Doc. No. 62] – filed December 3, 2014 – reflects legal services in the amount of $4,368.04. Seventy-five percent (75%) would be $3,276.03. Yet, MOR-9 for the October Monthly Operating Report shows a $10,000.00 payment to the Davis Law Firm (check #1100) on October 22, 2014. Candor to the Court has taken on a whole new meaning!

72. When it comes to gross mismanagement, Goldstein – bless his heart – just can't help himself. The October MOR [Doc. No. 62] Balance Sheet (page 4 of 41) lists an account receivable of $443,227.92 from NRG Technicians, LLC ("NRG"), a New Mexico corporation. Amended Schedule B shows the Debtor owns NRG Technicians, LLC.

73. NRG was organized in November 2013 by Patrick Padilla from Santa Fe, New Mexico. NRG was dissolved on November 5, 2104 by Patrick Padilla from Santa Fe, New Mexico (see attached Exhibit "C"). Patrick Padilla, from Santa Fe, New Mexico, is the President of the Debtor!! (See attached Exhibit "D".)

74. Goldstein, the Debtor's CEO, had the Debtor's President proceed to dissolve NRG with that owing the Debtor $443,277.92. Between the Petition Date and November 5, 2014, the Debtor did not sue NRG to collect the $443,277.92.

16

75.     To complete the mismanagement for the month of October 2014, the Debtor borrowed $7,200.00 without notice to creditors or Court permission [Doc. No. 63, MOR-3, page 3 of 41].

## LEGAL AUTHORITIES

### Examiner

76.     Section 1104(c) provides as follows:

> "[i]f the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate."

11. U.S.C. § 1104(c).

77.     Where there is a factual basis supporting the need for an independent investigation of fraud, dishonesty, or gross mismanagement of the debtor, and such appointment is in the interests of the creditors, any equity security holders, and other interests of the estate, the court, on request of a party in interest or the United States trustee, can exercise its discretion and appoint an examiner.  The "best interests" test is flexible and discretionary and requires the court to make a cost-benefit analysis and determine whether the creditors would be best served by the appointment of an examiner or whether the costs of an examiner are disproportionately high.  *In re Table Talk, Inc.*, 22 B.R. 706 (Bankr. D. Mass. 1982); *In re Gilman Services, Inc.*, 46 B.R. 322 (Bankr. D. Mass. 1985) (appointment of examiner warranted where debtor sold assets to a related entity pre-

17

petition, continued to sustain significant losses post-petition, and filed inadequate post-petition financial statements).

## LEGAL AUTHORITIES

### Trustee

78.     Pre-petition conduct of debtor's management may present sufficient cause for appointment of trustee where pre-petition conduct exhibits patters of intermingling funds and of expedient transfers, absence of proper record keeping, and general lack of sound business management. *In re Rivermeadows Associates, Ltd.*, 185 B.R. 615 (Bankr. D. Wyo. 1995).

79.     Courts have approved the appointment of a trustee for cause in Chapter 11 reorganization cases where there was a failure to keep the affairs of the debtor corporation separate from those of individuals. *In re Great Northeastern Lumber & Millwork Corp.*, 20 B.R. 610, 9 Bankr. Ct. Dec. (CRR) 425 (Bankr. E.D. Pa. 1982); the debtor made no serious effort to collect a debt from affiliated companies and was in the awkward position of having to decide whether to sue itself. *In re Oklahoma Refining Co.*, 838 F.2d 1133, 18 Collier Bankr. Cas. 2d (MB) 278 (10th Cir. 1988); the debtor failed to disclose items of income or ceratin liabilities in original and amended schedules without justification. *In re Deena Packaging Industries, Inc.*, 29 B.R. 705, 10 Bankr. Ct. Dec. (CRR) 603 (Bankr. S.D.N.Y 1983); Chapter 11 debtors' exhibited a lack of candor, in failing to disclose material information regarding their finances or ownership, and they misused the bankruptcy process in an attempt to avoid payment to a creditor with which they had been involved in pre-petition litigation, and toward which they bore significant animosity. *In re Celeritas Technologies, LLC*, 446 B.R. 514, 54 Bankr. Ct. Dec. (CRR) 132 (Bankr. D. Kan. 2011);the DIP failed to initiate an action for recovery of avoidable transactions. *In re William H.*

Case 14-12842-t11    Doc 89    Filed 12/24/14    Entered 12/24/14 10:05:44 Page 18 of 36

*Vaughn & Co., Inc.*, 40 B.R. 524 Bankr. L. Rep. (CCH) ¶69993 (Bankr. E.D. Pa. 1984); an individual debtor operated a Ponzi scheme. *In re Vaughn*, 429 B.R. 14, 53 Bankr. Ct. Dec. (CRR) 88 (Bankr. D.N.M. 2010); the debtor failed to make payments to secured creditors, resulting in a depletion of the value of assets to the substantial detriment of unsecured creditors. *In re McCall,* 34 B.R. 68 (Bankr. D.N.M. 1988); The DIP violated numerous Code provisions, such as those involving unauthorized sales of estate assets, unauthorized employment and payment of professionals and employees, and failure to file operating reports or failed to comply with the bankruptcy court's rules regarding the operation of a Chapter 11 debtor. *In re Nautilus of New Mexico, Inc.*, 83 B.R. 784 (Bankr. D.N.M. 1988); there was evidence indicating a preferential transfer to an officer of the debtor corporation, a lack of cooperation on the part of individuals involved in the proceedings, and intermingling of substantial assets of various business entities. *In re Vischschoonmaker, Ossendryver Galleries Intern., Inc.* 35 B.R. 816 (Bankr. D. Haw. 1983).

80.     Among factors to be considered in determining whether to appoint Chapter 11 trustee pursuant to 11 U.S.C.A. § 1104, are: (1) trustworthiness of debtor; (2) debtor's past and present performance and prospects for debtor's rehabilitation; (3) confidence or lack thereof, of business community and creditors in present management; and (4) benefits derived by appointment of trustee, balanced against cost of appointment. *In re Soundview Elite Ltd.*, 503 B.R. 571, 59 Bankr. Ct. Dec. (CRR) 16 (Bankr. S.D. N.Y. 2014); *In re LHC, LLC*, 497 B.R. 281 (Bankr. N.D. Ill. 2013). Court may consider both pre-and postpetition misconduct of current management in deciding whether "cause" exists for appointment of Chapter 11 trustee. 11 U.S.C.A. § 1104(a)(1). *In re The 1031 Tax Group, LLC*, 374 B.R. 78, 48 Bankr. Ct. Dec. (CRR) 169, Bankr. L. Rep. (CCH) P 81007 (Bankr. S.D.N.Y. 2007). Among considerations bearing on whether "Cause"

19

exists for appointment of Chapter 11 trustee are the materiality of any misconduct by debtor-in-possession, debtor-in-possession's evenhandedness or lack thereof in dealings with insiders and affiliated entities in relation to other creditors, existence of pre-petition voidable preferences or fraudulent conveyances, whether any conflicts of interest on part of debtor-in-possession are interfering with its ability to fulfill its fiduciary duties, and whether there has been self-dealing or squandering of estate assets. 11 U.S.C.A. § 1104(a)(1). *In re Veblen West Dairy, LLP*, 434 B.R. 550, 53 Bankr. Ct. Dec. (CRR) 141 (Bankr. D. S.D. 2010).

81.    Bankruptcy court is vested with even broader discretionary powers where appointment of Chapter 11 trustee is sought, not for "cause," but on theory it is in interests of creditors and estate, and court may consider equitable factors as part of its "interests" analysis. 11 U.S.C.A. § 1104(a)(1,2). Chapter 11 Debtor's ability to fulfill its duty of care to protect estate assets, its duty of loyalty, and its duty of impartiality is at the base of what bankruptcy court must consider in deciding whether to appoint trustee based upon the interests of creditors or the estate. *In re Celeritas Technologies, LLC*, 446 B.R. 514, 54 Bankr. Ct. Dec. (CRR) 132 (Bankr. D. Kan. 2011).

82.    "[D]ebtors-in-possession have a fiduciary duty to maximize the value of the estate." *In re Reliant Energy Channelview LP*, 594 F.3d 200, 2010 (3rd Cir. 2010). That duty includes making "impartial investigations and decisions in pursuing claims on behalf of the estate." *Matter of Fiesta Homes of Georgia, Inc.*, 125 B.R. 321, 326 (Bankr. S.D. Ga. 1990) (internal citations omitted).

83.    *In re Orbit Petroleum, Inc.*, 395 B.R. 145 (Bankr. N.M. 2008), offers insight into what this Court expects from a debtor it if intends to remain in Chapter 11. This Court denied a

Motion to Convert or Dismiss under Section 1112(b) – despite demonstrated "cause" – because a plan has been filed which purports to pay all creditors in full as of the effective date of the plan ..." *Id.* at 149. Part of the 'demonstrated cause" was failure to file Monthly Operating Reports, failure to make payments to secured creditors and operating losses. Each of these factors is present in the instant case. The Debtor has not proposed a plan at this point in the case and there is no reason to believe that any interest exists to pay ALL creditors in full – $2,492,704.14 [Doc. No. 44] – <u>plus</u> the Guizot, LLC claim of nearly $1,000,000.00. If there is "cause" to convert under Section 1112(b), then surely these is "cause" in this situation to insert competent and honest management to see th case to conclusion.

84.     To date, the Debtor (Chuza) has engaged in multiple behaviors continuing breach of fiduciary duty and gross mismanagement:

(a)     repeatedly bouncing checks;

(b)     frivolous claim objections (Baker Hughes);

(c)     acrimonious treatment of creditors (Banker Hughes) attempting removal from UCC;

(d)     active steps to place $443,000 in assets beyond cost-effective collection by the estate;

(e)     deliberately over paying Debtor counsel in violation of court orders;

(f)     wasting assets (cash) of the estate by paying for private planes leased from insiders or affiliates of the Debtor;

(g)     utilizing cash collateral without court permission;

(h)     paying insiders/shareholder "creditors" (Joyce Sellars) and not paying legitimate unsecured creditors;

(i)     preferential payments to relatives (Leon Goldstein) at the expense of unsecured creditors;

(j)     failure to object to unsecured claims of relatives (Leon Goldstein) asserting secured claims and post-petition interest;

(k)     Failure to seek recovery of funds from corporate officer (Bobby Goldstein) for wasting of corporate assets when Debtor is insolvent (use of private aircraft);

(l)     filing inaccurate or false Schedules regarding existence of creditors and allowance of claims;

(m)     failure to close pre-petition bank accounts and place funds in DIP account; and

(n)     payment to disputed creditors from pre-petition bank account not closed as required by the Bankruptcy Code.

85.     For over twenty-five (25) years, the Bankruptcy Judges of this District have consistently found that the conduct described in the preceding paragraph (and other places in this Motion) has warranted the appointment of a Chapter 11 Trustee or conversion, either of which were designed to insert honesty, integrity and impartiality to their respective case.

- *In re Nautilus of New Mexico, Inc.*, 83 B.R. 784 (McFeeley - appointment of trustee)
- *In re Plaza de Retiro, Inc.*, 417 B.R. 632 (Bankr. N.M. 2009) (Starzynski - appointment of trustee)

- *In re Pettingill Enterprises, Inc.*, 2013 WL 5350789 (Bankr. N.M.) ( Jacobvitz - conversion to Chapter 7)
- *In re Piccacho Hills Utility Co., Inc.*, 518 B.R. 75 (Bankr. N.M. 2014) (Thuma - conversion to Chapter 7).

86.    This Court should, upon contemplation of the gross mismanagement, animosity and self-dealing exhibited by the Debtor so far in this case, follow the long-standing reaction to and intolerance of corporate behavior that is contrary to the aquality and equity set forth in the Bankruptcy Code.   This case cries out for a Chapter 11 Trustee, Examiner of Responsible Corporate Officer.  The Official Unsecured Creditors Committee accordingly requests same.

WHEREFORE, PREMISES CONSIDERED, the Committee prays that the Court, after notice and hearing, appoint an examiner with expanded powers, or a responsible officer, or a trustee, and for such other and further relief as is just.

Respectfully submitted,

**JAMES & HAUGLAND, P.C.**
609 Montana Avenue
El Paso, Texas 79902
Telephone: 915-532-3911
Facsimile: 915-541-6440

By: _____
WILEY F. JAMES, III
State Bar No. 10554300
Attorney for
Attorney for OFFICIAL UNSECURED
CREDITORS COMMITTEE

23

## CERTIFICATE OF SERVICE

I certify that on this ___ day of December, 2014, a true and correct copy of the foregoing was served upon the following parties via electronic means as listed on the Court's ECF Noticing System or if by regular, first class mail, on the ___ day of December, 2014, a copy of the foregoing was mailed to:

William F. Davis
Phyllis L. MacCutcheon
Anne Goodman
Nephi D. Hardman
Vashti Lowe
William F. Davis & Associates, P.C.
6709 Academy NE, Suite A
Albuquerque, NM 87109
*Attorneys for Debtor-in-Possession*

Seth Bingham
P.O. Box 869
Farmington, NM 87499-0869
sbingham@mstlaw.com
*Attorney for Aqua Moss, LLC and M&R Trucking*

James A Askew
Askew & Mazel, LLC
320 Gold Ave., SW, Suite 300-A
jaskew@askewmazelfirm.com

Curtis R. Gurley
P.O. Box 1618
Aztec, NM 87410
cgurley@aztecwell.com
*Attorney for Basin Disposal*

Hugh M. Ray, III
McKool Smith, P.C.
600 Travis, Suite 7000
Houston, TX 77002
ssolomon@nathansommers.com
*Attorney for Guizot, LLC*

Carl Dore, Jr.
Zachary S. McKay, Esquire
17171 Park Row., Suite 160
Houston, TX 77084
carl@dorelawgroup.net
zmckay@dorelawgroup.net
*Attorneys for Weatherford US, LP*

Blake Hamm
Snow Spence Green, LLP
2929 Allen Pkwy., Suite 2800
Houston, TX 77019
blakehamm@snowspencelaw.com
*Attorney for Baker Hughes Oilfield Operations, Inc.*

Kristin McLaurin
Baker Hughes Oilfield Operations, Inc
2929 Allen Pkwy., Suite 2100
Houston, TX 77019
kristin.mclaurin@bakerhughes.com
*Attorney for Baker Hughes*

Leonard Martinez-Metzgar
The Office of the United States Trustee
PO Box 608
Albuquerque, NM 87103
Leonard.martinez-metzgar@usdoj.gov
*United States Trustee*

and to all of the parties listed on the attached matrix.

_____
WILEY F. JAMES, III

24

Label Matrix for local noticing
1084-1
Case 14-12842-t11
New Mexico
Albuquerque
Fri Nov 21 09:33:00 MST 2014

Agua Moss, LLC
PO Box 600
Farmington, NM 87499-0600

Aztec Well Servicing Co.
Post Office Box 100
Aztec, NM 87410-0100

Baker Hughes Oilfield Operations, Inc.
c/o Kenneth Green/Blake Hamm
Snow Spence Green LLP
2929 Allen Parkway, Suite 2800
Houston, TX 77019-7100

Basin Disposal, Inc.
Post Office Box 100
Aztec, NM 87410-0100

Chuza Oil Company, Domestic Profit
4516 Lovers Lane #104
Dallas, TX 75225-6925

Guizot, LLC
c/o Spencer D. Solomon
Nathan Sommers Jacobs, P.C.
2800 Post Oak Blvd., 61st Floor
Houston, TX 77056-6131

M&R Trucking, Inc.
PO Box 600
Farmington, NM 87499-0600

Taxation and Revenue Department of the State
PO Box 8575
Albuquerque, NM 87198-8575

Totah Rental & Equipment Co., Inc.
Post Office Box 100
Aztec, NM 87410-0100

Triple S Trucking Co., Inc.
Post Office Box 100
Aztec, NM 87410-0100

Weatherford US LP
c/o Carl Dore', Jr.
Dore' Law Group, P.C.
17171 Park Row, Suite 160
Houston, TX 77084-4927

United States Bankruptcy Court
500 Gold Avenue SW, 10th Floor
PO Box 546
Albuquerque, NM 87103-0546

4 RIVERS Equipment
1100 Troy King Rd.
FARMINGTON, NM 87401-3621

AQUA MOSS
P.O. BOX 600
FARMINGTON, NM 87499-0600

AQUA MOSS
c/o Miller Stratvert P.A.
P.O. BOX 869
FARMINGTON, NM 87499-0869

Aztec Well Servicing Co.
c/o Curtis R. Gurley
Post Office Box 1618
Aztec, New Mexico 87410-4618

BAKER HUGHES
P.O. BOX301057
DALLAS, TX 45303

BASIN PERFORATING
P.O. BOX 1156
FARMINGTON, NM 87499-1156

BASIN WELL LOGGING WIRELINE SERVICE, INC.
c/o Thrower Law Firm, P.C.
411 N. Auburn Avenue
Farmington, NM 87401-5814

BOBBY GOLDSTEIN
4516 LOVERS LANE #104
DALLAS, TX 75225-6925

BRANDT THROWER, ESQ.
411 N. AUBURN AVENUE
FARMINGTON, NM 87401-5814

Basin Disposal, Inc.
Post Office Box 100
Aztec, New Mexico 87410-0100

Basin Disposal, Inc.
c/o Curtis R. Gurley
Post Office Box 1618
Aztec, New Mexico 87410-4618

Bobby Goldstein as CEO of Chuza Oil Comp
Bobby Goldstein as President & CEO of Bo
Goldstein Productions and Bobby Goldstei
4516 Lovers Lane #104
Dallas, TX 75225-6925

CAMERON
102 MISSOURI STREET
BLOOMFIELD, NM 87413-5350

CHACO CONCRETE
P.O. BOX 2853
FARMINGTON, NM 87499-2853

DAWN TRUCKING
P.O. BOX 1498
FARMINGTON, NM 87499-1498

DIAMON DERRICK ENGEERING
42 RD 3581
FLORA VISTA, NM 87415-9607

DOGHOUSE SUPPLY
1201 DOWELL ROAD
FARMINGTON, NM 87401-8106

DOUBLE S HOT SHOT
169 ROAD 3100
AZTEC, NM 87410-9530

ENERDYNE LLC
P.O. BOX 502
ALBUQUERQUE, NM 87103-0502

ENERGY PUMP & SUPPLY, INC.
2010 TROY KING ROAD
FARMINGTON, NM 87401-3118

ENVIROTECH
5796 US HWY 64
FARMINGTON, NM 87401-1584

FLOTEK PUMP SERVICES
P.O. BOX 677496
DALLAS, TX 75267-7496

FLOTEK PUMP SERVICES
c/o Nancy S Cusack, Hinkle Shanor LLP
P.O. BOX 2068
Santa Fe NM 87504-2068

FRACMASTER, LLC
5315B FM 1960W#180
HOUSTON, TX 77069-4410

GAS ANALYSIS SERVICE
P.O. BOX 147
FARMINGTON, NM 87499-0147

Guizot, LLC
5526 Candlewood Dr.
Houston, TX 77056-1605

INDUSTRIAL ECOSYSTEMS, INC.
P.O. BOX 1202
FLORA VISTA, NM 87415-1202

INTERNAL REVENUE SERVICE
PO BOX 7346
PHILADELPHIA, PA 19101-7346

JOYCE SELLARS
C/O JMS MINERALS, LLC
2801 BOLTON BOONE, SUITE 101
DESOTO, TX 75115-2041

K&C TRANSPORT, LLC
#6 CR 3520
FLORA VISA, NM 87415-9680

LEON GOLDSTEIN
1600 POST OAK BLVD. #1803
HOUSTON, TX 77056-2918

LF WELL SERVICE, INC.
P.O. BOX 1590
FARMINGTON, NM 87499-1590

LIQUID LEVEL INC.
P.O. BOX 2205
DURANGO, CO 81302-2205

M&R TRUCKING
281 CR 350
FARMINGTON, NM 87401

M&R TRUCKING
c/o Miller Stratvert P.A.
P.O. Box 869
FARMINGTON, NM 87499-0869

MO-TE, INC.
281 CR 350
FARMINGTON, NM 87499

NCE SURVEYS, INC.
P.O. BOX 6612
FARMINGTON, NM 87499-6612

NEW MEXICO TAXATION & REVENUE DEPT.
PO BOX 8575
ALBUQUERQUE, NM 87198-8575

O.F.T. CONSTRUCTION, INC.
P.O. BOX 403
KIRTLAND, NM 87417-0403

RESOURCE PRODUCTION COMPANY
P.O. BOX 3076
FARMINGTON, NM 87499-3076

RIG EQUIPMENT & SUPPLY
P.O. BOX 3128
FARMINGTON, NM 87499-3128

SELECT OIL TOOLS, LLC
P.O. BOX 630950
HIGHLANDS RANCH, CO 80163-0950

SERRANO'S, INC.
P.O. BOX 490
FLORA VISTA, NM 87415-0490

SIERRA OILFIELD SERVICES, INC.
P.O. BOX 6074
FARMINGTON, NM 87499-6074

SIGNA ENGINEERING
2 NORTHPOINT DR, SUITE 700
HOUSTON, TX 77060-3200

Securities & Exchange Commission
Attn: Reorganization
1801 California St Ste 4800
Denver CO 80202-2666

TUBOSCOPE
P.O. BOX 201177
DALLAS, TX 75320-1177

```
Totah Rental & Equipment Co., Inc.        Totah Rental & Equipment Co., Inc.        Triple S Trucking Co., Inc.
Post Office Box 100                       c/o Curtis R. Gurley                      c/o Curtis R. Gurley
Aztec, New Mexico 87410-0100              Post Office Box 1618                      Post Office Box 1618
                                          Aztec, New Mexico 87410-4618             Aztec, New Mexico 87410-4618


U.S. Department of Justice                United States Department of the Interior  United States Trustee
950 Pennsylvania Avenue, NW               Bureau of Land Management                 PO Box 608
Washington, DC 20530-0001                 Department of the Interior                Albuquerque, NM 87103-0608
                                          1849 C Street, N.W.
                                          Washington, DC 20240-0002


WEATHERFORD US LP                         WIRELINE SPECIALITIES, INC.               WSI ENTERPRISES
P.O. BOX 301003                           P.O. BOX 1816                             P.O. BOX 6390
DALLAS, TX 75303-1003                     VERNAL, UT 84078-5816                     FARMINGTON, NM 87499-6390


Western Oilfields Supply Co               X-CHEM, LLC                               X-CHEM, LLC
dba Rain for Rent                         P.O. BOX 971433                           c/o Blake Hamm Snow Spence Green LLP
5101 Office Park Dr                       DALLAS, TX 75397-1433                     2929 Allen Parkway Suite 2800
Bakersfield CA 93309-0615                                                           Houston, TX 77019-7100


Nephi D Hardman                           Phyllis L. MacCutcheon                    Vashti A. Lowe
William F. Davis & Assoc., P.C.           William F. Davis & Assoc., P.C.           William F. Davis & Associates PC
6709 Academy NE, Suite A                  6709 Academy Rd NE                        6709 Academy NE, Ste A
Albuquerque, NM 87109-3363                Ste. A                                    Albuquerque, NM 87109-3363
                                          Albuquerque, NM 87109-3363


William F. Davis
6709 Academy NE, Suite A
Albuquerque, NM 87109-3363
```

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

```
(u)Flotek Pump Services                   (d)AZTEC WELL SERVICING CO.              (d)TRIPLE S TRUCKING CO.
                                          P.O. BOX 100                             P.O. BOX 100
                                          AZTEC, NM 87410-0100                     AZTEC, NM 87410-0100


End of Label Matrix
Mailable recipients    75
Bypassed recipients     3
Total                  78
```

{ Back to Search Results }

**OVERVIEW**    CONTACT AND MAP

**Mr. Robert Nathan Goldstein**

| | |
|---|---|
| Bar Card Number: | 08102590 |
| Work Address: | 4516 Lovers Ln # 104 |
| | Dallas, TX 75225-6925 |
| Work Phone Number: | 214-741-4600 |
| Primary Practice Location: | DALLAS , Texas |

**Current Member Status**
Not Eligible To Practice In Texas (click for detail)

In cooperation with

**LICENSE INFORMATION**

| | |
|---|---|
| Bar Card Number: | 08102590 |
| Texas License Date: | 05/06/1988 |

**COURTS OF ADMITTANCE**

**Federal**
None Reported By Attorney

**Other Courts**
None Reported By Attorney

**PRACTICE INFORMATION**

| | |
|---|---|
| Firm: | Robert N Goldstein |
| Firm Size: | None Specified |
| Occupation: | None Specified |
| Practice Areas: | None Reported By Attorney |
| Services Provided: | None Reported By Attorney |
| Foreign Language Assistance: | None Reported By Attorney |

**OTHER STATES LICENSED**
None Reported By Attorney

**LAW SCHOOLS**

| Law School | Graduation Date | Degree Earned |
|---|---|---|
| Baylor University | | |

**PUBLIC DISCIPLINARY HISTORY**

**State of Texas***

| Sanction | Date of Entry | Sanction Date Start - End | Probation Date Start - End |
|---|---|---|---|

No Public Disciplinary History - Texas

*NOTE: Only Texas disciplinary sanctions within the past 10 years are displayed. For sanction information beyond 10 years, information about a specific disciplinary sanction listed above or to request a copy of a disciplinary judgment, please contact the Office of the Chief Disciplinary Counsel at (877) 953-5535. There is a $15.00 fee for each disciplinary judgment copied. Make checks payable to: State Bar of Texas; PO Box 12487; Austin TX 78711 or by Credit Card.

**Other States**

| Sanction | State | Sanction Date Start - End |
|---|---|---|

None Reported By Attorney

**Statutory Profile Last Certified On:**

The Texas Attorney Profile provides basic information about Attorneys licensed to practice in Texas. Attorney profile information is provided as a public service by the State Bar of Texas as outlined in Section 81.115 of the Texas Government Code. The information contained herein is provided "as is" with no warranty of any kind, express or implied. Neither the State Bar of Texas, nor its Board of Directors, nor any employee thereof may be held responsible for the accuracy of the data. Much of the information has been provided by the attorney and is required to be reviewed and updated by the attorney annually. The information noted with an asterisk (*) is provided by the State Bar of Texas. Texas grievance/disciplinary information will not appear on the profile until a final determination is reached. Access to this site is authorized for public use only. Any unauthorized use of this system is subject to both civil and criminal penalties. This does not constitute a certified lawyer referral service.

**EXHIBIT**

Case 14-12842-t11    Doc 89    Filed 12/24/14    Entered 12/24/14 10:05:44    Page 28 of 36

12/23/2014 11:00 AM

**Disciplinary Status**

Disbarred

For more information, please contact the State Bar of Texas Office of the Chief Disciplinary Counsel at (877)953-5535




Enter search keyword
GOT BACK & KNEE PAIN? Get a Pain Relieving Brace! At Little or No Cost to You
Call the Health Hotline Today 800-238-4840

WHEN DOES CHEATERS' AIR? Enter your zip code



# Bobby Goldstein Biography



**BOBBY GOLDSTEIN**



SHOP AT CHEATERS'
...encouraging the renewal of temperance virtue...

## EXECUTIVE PRODUCER

Dallas native BOBBY GOLDSTEIN attended Baylor Law School in Waco, Texas with a desire to get involved in the entertainment business. Without many entertainment opportunities in Texas, Goldstein immersed himself in trial law from 1987 to 1998 after becoming a licensed lawyer and establishing his own law practice in Dallas.

However, by 1992, Goldstein began to stray from his law practice to pursue his childhood passions — music and film. During his early years, Goldstein trained extensively as a pianist, honing his skill in both classical and pop genres. In his free time, he launched ambitiously into the music-publishing and treatment-writing arena and wrote and composed original music.

In 1995, Goldstein created the concept of **Cheaters** as a premise for a television series. His vision for the show came long before the popularity of reality programming. With no connections to the television industry, Goldstein wrote the treatment for **Cheaters** and forged ahead with his project. Goldstein dodged the film school route and began developing and perfecting his own television production and distribution company.

After establishing his own television production company (named Bobby Goldstein Productions, Inc.), Goldstein filmed the pilot for **Cheaters**. Then he booked a flight to Los Angeles and pitched the concept of **Cheaters** to networks, from which Goldstein received less than an enthusiastic response. Not discouraged, Goldstein went forward with the syndication of **Cheaters** on a slow roll-out basis, believing that the program's ratings would confirm and validate its value in the television marketplace. **Cheaters'** record now speaks for itself, and so does Goldstein's track record as an executive producer.

**Cheaters** is Goldstein's first venture in the television industry, and he currently has several other projects in development, including additional television series and feature film projects.

Comments are closed.

- Popular
- Latest
- Comments

- Facebook and Marriages... and Divorce: Is Social Media Ruining Marriages? May 23, 2012
- Tiger Woods and His Lady Friends October 18, 2010
- Did Taylor Swift Cheat on Conor Kennedy With His Cousin Patrick Schwarzenegger?! October 10, 2012
- UK Fans- Joey Greco Is Coming To You! May 16, 2012
- My Girlfriend Has Stopped Saying She Loves Me, Is She Cheating? November 14, 2011


Is he **cheating** on *you?*  search free
Reverse search his e-mail to find out!

| | | | | |
|---|---|---|---|---|
| Advertising | Broadcasters | Contact | Legal | Quizzes & Games |
| Air Times | Celebrity Cheaters | Dating Service | Live Counseling | Store |
| Ask Allie | Cheaters Blog | FAQs | Photo Credit | Submit a Case |
| Bios | Cheaters Spy Shop | Infidelity Study | Press Room | Video Clips |

© 2014 Bobby Goldstein Productions, Inc. All Rights Reserved.







| IFS # | Lien Type | Debtor Name | Debtor Type | Debtor Address | Lapse Date |
|-------|-----------|-------------|-------------|----------------|------------|
| 20100012433H | Initial Financing Statement | Chuza Oil Company | ORGANIZATION | 4516 LOVERS LANE #104, DALLAS, TX 75225 USA | 08/20/2015 |
| 20140021081J | Initial Financing Statement | Chuza Oil Company | ORGANIZATION | 4516 LOVERS LANE #104, DALLAS, TX 75225 USA | 08/28/2019 |
| 20120018839F | Initial Financing Statement | Chuza Oil Company | ORGANIZATION | 4516 LOVERS LANE, SUITE 104, DALLAS, TX 75225 USA | 10/15/2017 |

**Total No. of Records: 3 Page 1 of 1**

**EXHIBIT**





## Search Results

Home

### Filing Information

| Financing Statement # | Filing # | Filing Type | Filing Date/Time |
|---|---|---|---|
| 20100012433H | 20100012433H | Initial Financing Statement | 08/20/2010 10:19 AM |

### Debtor Information

| Debtor Name | Debtor Type | Debtor Address |
|---|---|---|
| Chuza Oil Company | ORGANIZATION | 4516 LOVERS LANE #104, DALLAS, TX 75225 USA |

Total No. of Records: 1 Page 1 of 1

### Secured Party Information

| Secured Party Name | Secured Party Type | Secured Party Address |
|---|---|---|
| Mobile Operating, LLC | ORGANIZATION | 163 ST. FRANCIS STREET, SUITE 205, MOBILE, AL 36602 USA |

Total No. of Records: 1 Page 1 of 1

### Filing Documents

| File Name | Document Type |
|---|---|
| View Filed Document | Application form |

Total No. of Records: 1 Page 1 of 1

Back to UCC Search

Case 14-12842-t11     Doc 89     Filed 12/24/14     Entered 12/24/14 10:05:44 Page 33 of 36





UCC Search          Search Results

## Search Results

🏠Home

### Filing Information

| Financing Statement # | Filing # | Filing Type | Filing Date/Time |
|---|---|---|---|
| 20140021081J | 20140021081J | Initial Financing Statement | 08/28/2014 10:23 AM |

### Debtor Information

| Debtor Name | Debtor Type | Debtor Address |
|---|---|---|
| Chuza Oil Company | ORGANIZATION | 4516 LOVERS LANE #104, DALLAS, TX 75225 USA |

Total No. of Records: 1 Page 1 of 1

### Secured Party Information

| Secured Party Name | Secured Party Type | Secured Party Address |
|---|---|---|
| Basin Well Logging Wireline Service, Inc. | ORGANIZATION | P.O. BOX 1156, FARMINGTON, NM 87499 USA |

Total No. of Records: 1 Page 1 of 1

### Collateral Information

All Chuza Oil Company receivables to secure the sum of $100,000.00 plus interest at the rate of 10% per annum from August 1, 2014, until paid in full, pursuant to the Promissory Note dated August 1, 2014.

### Filing Documents

| File Name | Document Type |
|---|---|
| View Filed | Application form |

Case 14-12842-t11    Doc 89    Filed 12/24/14    Entered 12/24/14 10:05:44 Page 34 of 36

# Office of the Secretary of State

## Business Services Division

Login

| Home | Lookup Corporations | Paper Forms | e–Filing User Guide | Help |

Back to Search

| Name | NRG TECHNICIANS, LLC |
| Type | Domestic Limited Liability Company |
| Good Standing Status: | |

### Filing Information

| Corp # | 4675746 |
| Status | Voluntary Dissolution |
| Date of Incorporation | Nov–19–2012 |
| State of Incorporation | NM |
| Fiscal Year Date | |
| Report Duedate | |

### Address Information

1. Principal Place Of Business In NM

1512 S ST FRANCIS DR

SANTA FE , NM – 87505

### Agent Information

No Agent Information available.

### Directors Information

NO RECORD(S) FOUND

### Officers/Organizer Information

1. Organizer – PATRICK PADILLA

### Instrument History

1. Instrument

| Number | 4675746 |
| Filing Date | Nov–19–2012 |
| Type | Certificate Of Organization |
| Text | NRG TECHNICIANS, LLC |

2. Instrument

| Number | 8090076 |
| Filing Date | Nov–05–2014 |
| Type | Certificate Of Dissolution |
| Text | NRG TECHNICIANS, LLC (2PGS) |

Back to Search



EXHIBIT
C



## Office of the Secretary of State
### Business Services Division

Login

| Home | Lookup Corporations | Paper Forms | e-Filing User Guide | Help |

Corporation is in Good Standing

Back to Search

| | |
|---|---|
| **Name** | **CHUZA OIL COMPANY** |
| **Type** | **Domestic Profit** |
| **Good Standing Status:** | The above corporation is in Good Standing until 3/15/2016 |

| **Filing Information** | | **Address Information** |
|---|---|---|
| Corp # | 4296315 | 1. Corp Mailing Address |
| Status | Active Corporation |    4516 LOVERS LANE #104 |
| Date of Incorporation | Apr–29–2010 |    DALLAS, TX – 75225 |
| State of Incorporation | NM | 2. Principal Place Of Business In NM |
| Fiscal Year Date | Dec–31–2015 |    1000 CORDOVA PLACE #376 |
| Report Duedate | Mar–1S–2016 |    SANTA FE, NM – 87505 |

| **Agent Information** | **Directors Information** |
|---|---|
| **ERNEST L. PADILLA** | 1. BOBBY GOLDSTEIN |
| 1512 S. ST FRANCIS DRIVE , | |
| SANTA FE , NM – 87505 | |

**Officers/Organizer Information**

1. President – PATRICK PADILLA
2. Secretary – BOBBY GOLDSTEIN

**Instrument History**

1. Instrument
| | |
|---|---|
| Number | 4296315 |
| Filing Date | Apr–29–2010 |
| Type | Certificate Of Incorporation |
| Text | CHUZA OIL COMPANY 3 PGS 10,000 SHARES, PAR VALUE OF $.01 PERPETUAL |

2. Instrument
| | |
|---|---|
| Number | 7465025 |
| Filing Date | Nov–10–2011 |
| Type | Certificate Of Amendment |
| Text | AMENDING ARTICLE FOUR-AUTHORIZED SHARES (INCREASING AUTHORIZED SHARES TO 20,000 $.01 PV)(2 PGS) |

Back to Search

New Mexico Office of the Secretary of State, Verison 0.0.7.2



EXHIBIT
D