UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: CHUZA OIL COMPANY, DOMESTIC PROFIT               No. 14-12842-t11
       EIN: 27-2717292
       Debtor.

# DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION, DATED OCTOBER 16, 2015

## ARTICLE I
## SUMMARY

This Third Amended Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of **Chuza Oil Company** (the "Debtor") from cash flow from operations, loans, possible recovery of conveyances and equity contributions. The Debtor is not a small business.

General unsecured creditors are classified in Class 6. Holders of allowed Class 6 Claims will be paid in full from monthly Plan Payments over 48 months. Payment of the allowed Administrative Expense Claim of the Unsecured Creditors' Committee counsel will be capped at $250,000.00 and paid in 4 monthly payments. The first monthly payment to the Unsecured Creditors' Committee counsel will be $50,000.00 due October 15, 2015; the second monthly payment will be $75,000.00 due November 15, 2015; the third monthly payment will be $50,000.00 due January 2016; and the fourth and final payment will be $75,000.00 due February 15, 2016. Debtor's Counsel will be paid in full upon the Initial Distribution Date or the date the claim is allowed, whichever is the later of the two or as otherwise agreed. Payment of any Priority Tax Claims, and payment of any other priority claims will be paid monthly. The Debtor intends that the Plan be a 100% Plan, meaning Debtor anticipates Class 6 Claims to be paid in full with no interest.

The Debtor does not believe that any funds will remain from Plan Payments for disbursement to the subordinated Classes 7 insider creditors; however, if any such funds remain they will be disbursed to Classes 7 in the Debtor's discretion. The holders of the Class 8 Equity interest will retain their interest unchanged unless there is a rejecting impaired class. If there is a rejecting impaired class and subject to certain requirements set out in the Disclosure Statement, the Debtor may hold an auction to sell its stock.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

# ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01   Class 1 (Secured Claim of Basin Well Logging Wireline Service, Inc. ("Basin")). Class 1 consists of the allowed secured claim of Basin Well Logging Wireline Service, Inc. pursuant to a Promissory Note dated August 1, 2014 and a UCC-1 filed in New Mexico on August 28, 2014 to the extent allowed as a secured claim under §506 of the Code.

2.02   Class 2 (Secured Claim of Enerdyne, LLC ("Enerdyne")). Class 2 consists of the allowed secured claim of Enerdyne, LLC pursuant to a Mortgage and Security Agreement Dated August 8, 2012 and filed in San Juan County, NM on December 20, 2012, to the extent allowed as a secured claim under §506 of the Code.

2.03   Class 3 (Secured Claim of Joyce Sellars ("Sellars")) Class 3 consists of the allowed secured claim of Joyce Sellars. Sellars purchased the debt of Green Bank, N.A. with a Note Purchase Agreement dated June 20, 2014. Green Bank's original Revolving Note was for $2,000,000.00 and dated October 12, 2012. Green Bank recorded a Mortgage and Security Agreement on October 25, 2012 in San Juan County, NM as well as a UCC-1 in NM on October 15, 2012. Sellars claim is a secured claim to the extent allowed as a secured claim under §506 of the Code.

2.04   Class 4 consists of the allowed secured claim of Chuza Acquisition, LLC. Chuza Acquisition purchased the Baker Hughes claim for $425,000.00 in April 2015. The Debtor and Chuza Acquisitions have agreed that Chuza Acquisitions will have a secured allowed claim in the amount of $625,133.36 and will be satisfied by the Debtor paying a total of $500,000.00, with 0% interest. This claim will be paid in monthly payments of $8,333.00 for 60 months. The Baker Hughes claim was based on an oil and gas lien filed in San Juan County on October 8, 2014. The lien claims an interest in the NE Hogback Unit, specifically well #74H.

2.05   Class 5 (Secured Claim of M&M Creditors). Class 5 consists of the allowed secured claim of Aztec Well Servicing Co. ("Aztec"), Totah Rental and Equipment ("Totah"), Triple S Trucking Co. ("Triple S"), Weatherford US LP ("Weatherford US"), Weatherford Laboratories, Inc. ("Weatherford"), and X-Chem, LLC ("X-Chem")(collectively the "M&M Creditors"). The M&M Creditors provided pre-petition materials and services in support of Debtor's oil and gas operations on the NE Hogback Unit. The M&M Creditors (with the exception of Weatherford US and Weatherford) recorded lien affidavits in San Juan County, NM. The M&M Creditors claim a secured interest in the property listed below, to the extent allowed as a secured claim under §506 of the Code.

Aztec = NE Hogback Unit #40 and #74H

Totah= NE Hogback Unit #74H

Triple S= NE Hogback Unit #74H

Weatherford US= NE Hogback Unit #73 and 74

Weatherford= NE Hogback Unit #73 and 74

X-Chem=NE Hogback Unit #28, 29, 33, 40, 50, 51, 53, 56, 73H, and 74H

2.06  Class 6 (Unsecured Non-Priority Claims) (Non-Insiders). Class 6 consists of all non-priority unsecured claims of non-insiders allowed under §502 of the Code.

2.07  Class 7 (Unsecured Non-Priority Claims) (Insiders). Class 7 consists of all non-priority unsecured claims of insiders allowed under §502 of the Code. Class 7 consists of the allowed non-priority unsecured claims of insiders. This class includes loans made by shareholders and related entities (including the Chuza Parties) post-petition.

2.08  Class 8 (Equity). Class 8 consists of the equity interests in the Debtor.

# ARTICLE III
# TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01  Unclassified Claims. Under section §1123(a) (1), administrative expense claims and priority tax claims are not in classes.

3.02  Administrative Expense Claims. Each holder of an administrative expense claim allowed under § 503 of the Code ("Administrative Expense Claim") will be paid in full, in cash, on the later of the Initial Distribution Date of this Plan (as defined in Article VII) or the date that the claim is allowed, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. All allowed Fee Requests shall be paid in the amount determined by an Order of the Bankruptcy Court approving such Fee Requests, or as may otherwise be agreed upon in writing between the Reorganized Debtor and each such Claimant. If any Administrative Claimant objects to this form of payment, the Debtor will pay the full allowed Administrative Claim promptly upon entry of an order from the Court allowing such claim.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After Petition date | $0.00 | Paid in full on later of the Effective Date of the Plan, or the date the claim is allowed, or as otherwise agreed between Debtor and creditor. |

| | | |
|---|---|---|
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | $0.00 | Same as above. |
| Professional Fees, as approved by The Court<br><br>Debtor's Counsel ($350,000)<br>Unsecured Creditors' Committee Counsel ($250,000)<br><br>David Rockstraw ($7,500)<br>Gustavson ($10,000)<br>Malott ($8,446.87) | $625,946.87 (estimated) | Paid in full on later of the Initial Distribution Date of the Plan, or the date the claim is allowed, whichever is the later of the two, or as otherwise agreed between Debtor and creditor.<br><br>Debtor's Counsel shall receive 1% monthly interest on the unpaid balance on the Distribution Date each month until paid in full.<br><br>UCC counsel fees shall be paid in 4 monthly payments. The first monthly payment to the Unsecured Creditors' Committee counsel will be $50,000.00 due October 15, 2015; the second monthly payment will be $75,000.00 due November 15, 2015; the third monthly payment will be $50,000.00 due January 2016; and the fourth and final payment will be $75,000.00 due February 15, 2016. UCC counsel fees shall be capped at $250,000.00. |
| Clerk's Office Fees | $0.00 | Paid in full on the effective date of the Plan |
| Office of the U.S. Trustee Fees | $0.00 | Paid in full on the effective date of the Plan |
| TRD Post-Petition taxes | $10,082.65 | Paid in monthly payments, paid in full within 60 months of the Petition Date. |
| **TOTAL** | $636,029.52 | |

    3.03   <u>Priority Tax Claims</u>. Holders of allowed Claims entitled to priority under §507(a)(8) of the Bankruptcy Code ("Priority Tax Claims") shall be paid in full and shall bear interest at the statutory rate. All allowed Priority Tax Claims shall be paid in full, within 60 months of the Petition Date, as required by Bankruptcy Code §1129(A)(()c)(ii). If any Priority Tax Claim has not been allowed before the Effective Date, the Allowed amount of each Tax Claim shall include interest from the Effective Date through the date the Tax Claim is allowed by the Court.

    3.04   <u>United States Trustee Fees</u>. All fees required to be paid by 28 U.S.C. §1930(a) (6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

**ARTICLE IV**

# TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01 Claims and interests shall be treated as follows under this Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| Class 1 | Secured claim of Basin Well Logging Wireline Service, Inc.<br><br>Collateral description = Receivables to secure the sum of $100,000.00 plus interest at the rate of 10% per annum from August 1, 2014.<br><br>Secured Claim Amount = $92,901.14<br><br>Priority of lien = 1 (UCC-1 Filed 8/28/14) (No Security Agreement/Interest filed with UCC-1)<br><br>Principal owed= $92,901.14<br><br>Total claim= $92,901.14 | No | Impaired | The allowed secured claim will be paid as follows:<br><br>Estimated Monthly Pmt =$2,322.53<br><br>Pmts Begin =on Initial Distribution Date<br><br>Interest rate % = 10% per annum on allowed secured amount<br><br>Treatment of Lien =Retain lien until paid in full |
| Class 2 | Secured claim of Enerdyne, LLC<br><br>Collateral description = Western Federal Lease NMNM #58917<br><br>Secured Claim Amount = $102,601.53<br><br>Priority of lien = 1 (Mortgage and Security Interest filed 12/20/12)<br><br>Principal owed= $102,601.53<br><br>Total claim= $102,601.53 | No | Impaired | The allowed secured claim will be paid as follows:<br><br>Estimated Monthly Pmt =$2,137.53<br><br>Pmts Begin =on Initial Distribution Date<br><br>Interest rate % = 5% per annum on allowed secured amount<br><br>Treatment of Lien =Retain lien until paid in full |

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| Class 3 | Secured claim of Joyce Sellars<br><br>Collateral description = All Assets of Debtor<br><br>(Sellars purchased debt of Green Bank, N.A. pursuant to a Note Purchase Agreement dated June 20, 2014.<br>Green Bank's original Revolving Note was for $2,000,000.00 and dated October 12, 2012. Green Bank recorded a mortgage on 10/25/12.)<br><br>Secured Claim Amount = $295,421.80<br>Priority of lien = 1; except as to any interests in the 73 and 74 wells, to which it is subordinate to Class 4<br><br>Principal owed= $295,421.80<br><br>Total claim= $295,421.80 plus reasonable attorney fees | No | Impaired | To the extent it is Allowed as a secured claim, the allowed secured claim will be paid as follows:<br><br>Monthly Pmt     = $6,276.84<br><br>Pmts Begin     = on Initial Distribution Date<br><br>Pmts End     =when paid in full<br><br>Interest rate %     = 10%<br><br>Treatment of Lien     =Retain lien until paid in full.<br><br>Class 3 consists of the secured claim of Sellars, to the extent that she is determined to have an allowed secured claim. Any portion of the claim determined to be unsecured will be paid as set forth in Class 7 below. Class 3 also contains reasonable attorney fees.<br><br>Neither the Debtor or Sellars will seek to enforce the Sellars claim or the collateral for the Sellars claim against Guizot or use the Sellars claim or the Sellars collateral to impair or reduce any Guizot claim or interest. |
| Class 4 | Secured claim of Chuza Acquisition, LLC ("Chuza Acquisition") claim purchased from Baker Hughes Oilfield Operations, Inc. ("Baker Hughes")<br><br>Collateral description = NE Hogback Lease #74 H Well<br><br>Baker Hughes POC Claim Amount = $625,133.36 | Yes | Impaired | The allowed secured claim will be paid as follows:<br><br>Monthly Pmt     = $8,333.33<br><br>Pmts Begin     = on Initial Distribution Date<br><br>Pmts End     =when paid in full<br><br>Interest rate %     = 0% |

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| | Agreed to Claim Amount=$625,133.36<br><br>Priority of lien = 2 (Claim of Lien filed 10/8/14)<br><br>Principal owed= $500,000.00<br><br>Total claim= $500,000.00 | | | Treatment of Lien = Retain lien until paid in full.<br><br>Chuza Acquisition shall receive a promissory note (the "Note") substantially in the form attached as Schedule 11 to the Settlement Agreement (Exhibit K), from the reorganized debtor in the amount of $625,133.36.<br><br>Commencing 30 days after the Effective Date of the Plan, the reorganized debtor will make 60 equal monthly payments of $8,333.33 for a total of $500,000. If the reorganized debtor timely makes all 60 payments, the Note shall be deemed satisfied in full and any security for the Note shall be promptly released and filed.<br><br>The Note shall be secured by the existing mineral interest liens filed by Baker Hughes and attached to proof of claim no. 14.<br><br>In the event of default of the Note, Chuza Acquisition shall be entitled to all remedies at law to collect the remaining balance of the |

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| | | | | Note, including foreclosing upon its mineral interest liens.<br><br>Default under the Note shall be defined as continued non-payment of any monthly payment for 21 calendar days after giving Notice to Chuza and its counsel. |
| Class 5 | Secured claims of<br>Aztec Well Servicing Co ("Aztec"); Totah Rental and Equipment ("Totah"); Triple S Trucking Co. ("Triple S"); Weatherford Laboratories, Inc. ("Weatherford"); Weatherford US LP ("Weatherford US"); X-Chem, LLC ("X-Chem")<br><br>**Collectively the M&M Creditors**<br><br>**Collateral description =**<br>Aztec = NE Hogback Unit #40 and #74H<br><br>Totah= NE Hogback Unit #74H<br><br>Triple S= NE Hogback Unit #74H<br><br>Weatherford US= NE Hogback Unit #73 and 74<br><br>Weatherford= NE Hogback Unit #73 and 74<br><br>X-Chem=NE Hogback Unit #28, 29, 33, 40, 50, 51, 53, 56, 73H, and 74H<br><br>**Secured Claim Amount =**<br>Total=$150,651.38<br><br>Aztec = $43,132.62<br><br>Totah= $4,176.23 | No | Impaired | The allowed secured claim will be paid as follows:<br><br>Allowed secured claims of Class 5 will be paid 100%, plus 2% interest of their allowed claim amount over 24 months.<br><br>Interest rate % = 2%<br><br>Treatment of<br>Lien       =Retain lien until paid in full |

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| | Triple S= $37,680.24<br><br>Weatherford US= $11,685.19<br><br>Weatherford= $22,140.57<br><br>X-Chem=$31,836.53<br><br>**Priority of lien =**<br><br>Aztec = claim of lien filed 9/15/14<br><br>Totah= claim of lien filed 9/15/14<br><br>Triple S= claim of lien filed 9/15/14<br>Weatherford US= no claim of lien filed<br><br>Weatherford= no claim of lien filed<br><br>X-Chem= claim of lien filed 10/9/14<br><br>Principal owed= **$150,651.38**<br><br>Total claim= **$150,651.38** | | | |
| **Class 6** | General Unsecured Class (Non-Insiders) | No | Impaired | The Debtor will pay 100% of the allowed Class 6 claims in equal monthly payments for 48 months without interest.<br><br>**No creditor shall receive more than 100% of its allowed Claim amount without interest.** |
| **Class 7** | Unsecured Creditors (Insiders) | Yes | Impaired | Allowed Class 7 Claims shall be paid, *pro rata*, from Plan Payments only if all Allowed Administrative Claims, Allowed Priority Tax Claims, other priority claims, secured tax claims, and Allowed Class 6 Claims have been paid in full. If Class 6 creditors have received a 100% distribution, |

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| | | | | the Debtor may, in its sole discretion, either make payments to the Class 7 creditors or terminate payment of any or all further Plan Payments. Any such termination of payment shall not constitute a default under the Plan. |
| **Class 8** | Equity interest Holders:<br><br>Bobby Goldstein 70.936286%<br><br>Cooper Goldstein 1.001846%<br><br>Dane Goldstein 0.333949%<br><br>Audrey Goldstein 0.263643%<br><br>Leon Goldstein 6.006245%<br><br>John Sellars 10.967575%<br><br>Sellars Capital 0.002857% Investment<br><br>Joyce Sellars 5.229146%<br><br>Chris Haines 1.256701%<br><br>Kristin Shepelwich 0.002858%<br><br>Doris Harvey 0.002857%<br><br>Gene Street 2.000000%<br><br>Sasha Sattari 2.000000% | Some | Impaired | Retain Interest |

    4.02    <u>Cramdown.</u> If any impaired class votes to reject this Plan, the Debtor reserves the right to request that the Bankruptcy Court confirm the Plan under the "cramdown" provisions of 11 U.S.C. §1129(b). Among the conditions for a cramdown is the requirement that the plan be "fair and equitable" with respect to each class of impaired unsecured claims that has not accepted it. 11 U.S.C. §1129(b) (1). A plan may be found to be fair and equitable with respect to a class of unsecured claims if "the holder

Case 14-12842-t11    Doc 401    Filed 10/16/15    Entered 10/16/15 15:55:16 Page 10 of 19

of any claim…junior to the claims of such class will not receive or retain under the plan on account of such junior claim…any property." 11 U.S.C. §1129(b) (2) (B) (ii).

In the event there is a rejecting impaired class, the Debtor may conduct an auction to sell its member interests. This auction will be conducted in such a way as to be fair and equitable with respect to the rejecting impaired class. The auction procedures will be approved by the Court by a separate and subsequent order. Prior to an auction being required under this section the court must find, after notice and hearing, that the filed rejection was filed in good faith and that the treatment of that creditor in the Plan of Reorganization was not fair and equitable and the court must find that the auction and auction procedures are in the best interest of creditors. The order resolving the issues required at this hearing would be issued at least 21 days prior to the confirmation hearing.

4.03    Guizot, LLC. The Debtor and Guizot, LLC were parties to Adversary Case No. 15-01012. This adversary case was closed on August 6, 2015. On June 23, 2015 the Court entered its Judgement on the Adversary Proceeding. (Docket No. 57). The Judgement denied the Debtor's Motion Pursuant to 11 U.S.C. §365 to Reject the Participation Agreement with Guizot (Docket No. 176 in the Bankruptcy Case). Debtor's objection to the Guizot proof of claim (Proof of Claim No. 21) was granted in part and overruled in part. The Court ruled that Guizot owes the Debtor $332,531.18 to complete the wells; that the Debtor owes Guizot $218,831.81 for operating revenue; and that there are lien claims of $941,556.88 (including post-petition interest) that increase Guizot's claim. This results in a net claim of $827,857.51 for Guizot. (Docket No. 57, Paragraph 3). The Court awarded Guizot a judgment in the amount of $827,857.51, plus post-judgment interest at the applicable federal rate, as a general unsecured claim. **Any and all claims of Guizot, including this Judgment are released upon the Effective Date.**

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02    Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. A disputed claim that is not so allowed shall receive no payment under the Plan and shall be discharged in full.

5.03    Power to Object to, Litigate, and Settle Disputed Claims. After the Effective Date, the Debtor, as the "Reorganized Debtor," shall have the sole power and authority (1) to object to Claims and (2) to litigate any Claim or Interest to Final Order, to settle and compromise any Claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure, and withdraw any objection to any Claim (other than a Claim deemed allowed pursuant to the Plan or allowed pursuant to a Final

Order). The Debtor may retain special counsel or allow the Unsecured Creditors' Committee to recover Chapter 5 claims for the benefit of the Reorganized Debtor.

    5.04    <u>Deadlines for Filing Claims.</u>

        (a) <u>Bar Dates for Claims and Interests (Other Than Administrative Claims)</u>. Each holder of a Claim (other than an Administrative Claim) or Interest must file a proof of Claim or proof of Interest, as the case may be, with the Bankruptcy Court (i) no later than the Bar Date established by Order of the Bankruptcy Court, **which bar date was January 5, 2015**, or (ii) to the extent that any such Holder is not subject to such Bar Date, the date that is thirty (30) days after the Effective Date, excluding the Effective Date, or by such later date as may be established by the Bankruptcy court. Notice of such Bar Date shall be provided by means of a separate notice to all parties listed on the official mailing matrix maintained by the Bankruptcy court. Any such Holder who does not file a proof of Claim or proof of Interest, as the case may be, by the deadline will be forever barred from asserting its Claim or Interest unless, and to the extend, that the Debtor listed such Claim in its Schedules filed with the Bankruptcy Court pursuant to Section 521 of the Bankruptcy Code as being liquidated in amount, not disputed and not contingent.

        (b) <u>Deadline for Administrative Claims that are Fee Requests</u>. All requests for compensation by a professional person under Bankruptcy Code §330 ("Fee Requests") must be filed with the Bankruptcy court within 60 days after the Effective Date. Any holder of such a Claim that does not file a request for payment within such 60-day period shall be forever barred from asserting its Claim.

        (c) <u>Deadline for Filing Administrative Claims Other than Fee Requests/Contents of Application</u>. All requests for payment of Administrative Claims (other than Fee Requests) must be filed with the Bankruptcy court within 30 days after the Effective Date. Any holder of such a Claim that does not file a request for payment within such 30-day period shall be forever barred from asserting its Claim.

        Any application for allowance of an Administrative Claim, other than a Fee Request, shall include: (i) the complete name and mailing address of the Claimant; (ii) the date the Administrative Claim was incurred; (iii) the amount of the Administrative Claim; (iv) the basis of the Claim; and (v) a copy of the contract, invoices or a summary thereof, or other documentation sufficient to support the Claim.

    5.05    <u>Time to Object to Claims and Interest (Other than Administrative Claims)</u>. Unless another date is established by the Bankruptcy Court or the Plan, any person

entitled to object to a Claim or Interest must file the objection with the Bankruptcy Court within 60 days after the later of (i) the Effective Date or (ii) the date that a proof of Claim with respect to such Claim is filed or deemed to have been filed with the Bankruptcy court.

5.06 <u>Allowance of Administrative Claims (Including Fee Requests)</u>. No Administrative Claim, including any Fee Request, shall be allowed without prior notice to creditors and parties and interest in accordance with the Bankruptcy Code and Bankruptcy Rules. Upon entry of an Order allowing such Administrative Claim, the Debtor shall pay such claim in accordance with the Plan, or as otherwise agreed between the Claimant and the Debtor.

5.07 <u>Objections to Administrative Claims (Including Fee Requests)</u>. Any objection to an Administrative Claim including a Fee Request, shall be filed with the Bankruptcy Court within the notice period specified in the applicable notice or as otherwise ordered by the Court.

5.08 <u>Less Favorable Treatment.</u> The Debtor and the Holder of an Allowed Claim may agree to payment of such Allowed Claim on a basis less favorable to the holder than provided in this Plan.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01 <u>Assumed Executory Contracts and Unexpired Leases</u>.

(a) The Debtor assumes the following executory contracts and/or unexpired leases effective upon the Effective Date of this Plan:

The Debtor will assume the NE Hogback Field, Lease #s:

NMNM 0006686
NMNM 04407
NMNM 04407A
NMNM 04443
NMNM 04443B
NMNM 04444
NMNM 05859
NMNM 077281
NMNM 077282
NMNM 077283
NMNM 077284
NMSF 081298A
NMSF 081299A

DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION                    13

Case 14-12842-t11    Doc 401    Filed 10/16/15    Entered 10/16/15 15:55:16 Page 13 of 19

And the Western Federal Lease NMNM 058917 with the United States Department of the interior Bureau of Land Management.

The Debtor currently uses 3 vehicles owned by NRG Technicians, LLC (2012 Dodge Ram 2500; 2012 Dodge Ram 3500; and 2012 Dodge Ram 5500). NRG Technicians is now defunct. To the extent that the Debtor continues to use these 3 vehicles it will pay the vehicle payments, maintenance, and insurance on them.

(b) Upon the Effective Date of this Plan, the Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of Confirmation Order.

(c) A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty calendar (30) days after the date of mailing to the claimant of notice of entry of the order confirming this Plan. If no such proof of Claim is timely filed, the Claim arising from rejection of the executory contract or unexpired lease shall be disallowed in full.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.01 **Funding the Plan.** The Reorganized Debtor shall fund the Plan from the proceeds of the Reorganized Debtor's operations, loans, or any other funds that the Debtor may collect including capital contributions and funds which may be recovered from actions under 11 U.S.C. §547 and §548.

7.02 **The Confirmation Order.** The Confirmation Order shall empower and authorize the necessary parties to take or cause to be taken, on or prior to the Effective Date, all actions necessary to enable them to implement the Plan.

7.03 **Debtor as Disbursement Agent.** The Reorganized Debtor will act as disbursement agent for all payments made under the Plan.

7.04 **Payment of Claims.** The Reorganized Debtor shall make payment to each Claim holder of record at the mailing address of record in the Bankruptcy Case, or such other address as the holder may provide in writing to the Reorganized Debtor. No distribution shall be made to any claimant on any distribution unless the payable distribution sum exceeds the sum of $10.00 after calculation of the face value of the allowed claim. The Reorganized Debtor may elect, in its sole discretion, to pay Holders of Class 8 Claims in periodic amounts that are greater than the amounts show or by lump sum payment in lieu of periodic distributions, or upon such other terms as may be agreed upon between the Reorganized Debtor and the holders of such Claims.

7.05 **Payments to Co-Debtors.** To the extent that a creditor recovers a portion of its allowed Claim from a co-debtor of the Debtor, the amount of the creditor's allowed Claim that is payable under this Plan shall be reduced by the amount that the creditor receives.

DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION 14

Case 14-12842-t11    Doc 401    Filed 10/16/15    Entered 10/16/15 15:55:16 Page 14 of 19

# ARTICLE VIII
# GENERAL PROVISIONS

    8.01    Definitions and Rules of Construction. In addition to terms defined in this Plan, the definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

    (a) "Confirmation Date" means the date the Bankruptcy Court enters a Confirmation Order confirming the Plan.
    (b) "Confirmation Order" means the order of the Bankruptcy Court pursuant to §1129 of the Bankruptcy Code confirming the Plan and approving the transactions contemplated under the Plan.
    (c) "Initial Distribution Date" means the date which is 30 days after the Effective Date of Plan.
    (d) "Chuza Parties" means Chuza Oil Company, Inc., Bobby Goldstein, Bobby Goldstein Productions, Inc., NRG Technicians, LLC Cheater's Spy Shop, Inc.; and the Estate of Leon Goldstein.
    (e) "Guizot Parties" means Marc Melcher, Guizot, LLC, and Chuza Acquisition, LLC.

    8.02    Effective Date of Plan. The effective date of this Plan is the fourteenth day after the date of the entry of the Confirmation Order, calculated in accordance with Bankruptcy Rule 9006(a); but if a stay of the Confirmation Order is in effect on that date, the Effective Date will be the first business day after the date on which no stay of the Confirmation Order is in effect, provided that the Confirmation Order has not been vacated.

    8.03    Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

    8.04    Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

    8.05    Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. As the context may require, the singular includes the plural, and the plural includes the singular.

    8.06    Controlling Effect/Governing Law. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of New Mexico govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.07    Corporate Governance.  The Debtor is a New Mexico corporation Robert Goldstein is the CEO and 70.94% shareholder.

8.08    Distribution Date.  The Distribution Date under the Plan will be the 30th day after the Effective Date.

## ARTICLE IX
## DISCHARGE

9.01.    Discharge.  On the Confirmation Date of this Plan, subject to occurrence of the Effective Date, the debtor will be discharged from all debts that arose before the Confirmation Date, to the extent specified in §1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in §1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in §1141(d)(6)(B).

9.02    Injunction.  Except as otherwise expressly provided in this Plan, entry of the Confirmation Order will permanently enjoin all Persons and parties who have held, hold, or may hold Claims or Interests on and after the Effective Date (a) from commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest against the Debtor, Reorganized Debtor, or Chuza Parties; (b) from the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtor, Reorganized Debtor, Chuza Parties, or the property of the Debtor, the Estate, the Reorganized Debtor, or Chuza Parties with respect to any such Claim; (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Debtor, the Reorganized Debtor, or Chuza Parties or against the property of the Debtor, the Estate, the Reorganized Debtor, or Chuza Parties with respect of any such Claim; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due from the Debtor, the Reorganized Debtor, or Chuza Parties, or against the property of the Debtor, the Estate, the Reorganized Debtor, or Chuza Parties with respect to any such Claim.

## ARTICLE X
## OTHER PROVISIONS

10.1    Property Vests in Reorganized Debtor.  Upon the Effective Date, except as otherwise specifically set forth in this Plan all Property of the Estate of the Debtor and each and every claim or cause of action that was asserted or could have been asserted by the Debtor against any party, in the Bankruptcy Case or otherwise, including causes of action for recovery of preferences, fraudulent conveyances, and any other action maintainable under §§ 542 through 553 of the Bankruptcy Code, shall vest in the Reorganized Debtor, free and clear of all Claims and Interests except as specifically provided for in the Plan or the Confirmation Order.    Upon the Effective Date the

Reorganized Debtor shall be substituted as a party to all pending matters, adversary proceedings, claims, administrative proceedings, and lawsuits involving the Debtor, whether before the Bankruptcy Court or otherwise.

10.2 Property Free and Clear of Liens. All Property of the Estate and the Reorganized Debtor, whether real property, personal property, intangible property, or any other property interest of any nature whatsoever, shall be free and clear of all Claims and interests of creditors, Interest holders, and other parties in interest, except as specifically provided for in the Plan or the Confirmation Order.

10.3 Unclaimed Property. All Unclaimed Property to be distributed under the Plan, if any, shall vest in the Reorganized Debtor if not claimed by the proper Claimant within two years after the date the property was supposed to have been distributed.

10.4 Post-Confirmation Operations. On the Effective Date, the Reorganized Debtor shall have full authority to operate its business, retain professionals, buy and sell its property, hire and fire employees, and otherwise operate to the fullest extent allowed by law, without further order of the Bankruptcy Court, and without Bankruptcy Court approval being required for compensation for any services rendered after the Confirmation Date.

10.5 Transferred/Retained Bankruptcy and Other Powers of the Reorganized Debtor. The Reorganized Debtor shall, after the Effective Date, be assigned and retain the powers of a debtor-in-possession for the purposes of objecting to Claims and prosecuting claims and causes of action under §§ 542, 543, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code available to the Debtor's Estate, with full authority to preserve, compromise, and resolve all such Claims and cases of action. The Reorganized Debtor shall also have full right, power, and authority to investigate and, if necessary, object to Claims and to commence actions to collect any assets or causes of action.

10.6 Reservation of Rights. All claims or causes of action, cross-claims, and counterclaims of the Debtor of any kind or nature whatsoever arising before the Confirmation Date and that have not been disposed of prior to the Confirmation Date shall be preserved for the benefit of the Reorganized Debtor, and vested in and prosecuted by the Reorganized Debtor as it sees fit.

10.7 Litigation of Estate Claims. Pursuant to 11 U.S.C. § 1123(b)(3)(B), the Reorganized Debtor shall retain and enforce, litigate, and liquidate all claims, causes of action, and interests belonging to the Debtor or the Debtor's Estate. The Reorganized Debtor shall have the choice whether to initiate, pursue, or, to conclude such litigation in its sole discretion.

10.8 Final Decree. Notwithstanding any other provision of the Plan, the Final Decree shall be entered only after all conditions precedent to substantial consummation of the Plan have been satisfied or waived.

10.9 Operating Reports. After the Effective Date, the Reorganized Debtor shall not be required to file operating reports with the Court.

10.10 Releases All claims of the Debtor, the Estate and the Chuza Parties against Baker Hughes, its officers, directors, affiliates, employees, and professionals or agents, from any and all claims and demands of any kind, whether known or unknown, fixed or contingent, that they ever had, now have, or can have from the beginning of time to the date of the Settlement Agreement against Baker Hughes are released. The exculpation and limitation of liability of the Debtor, Guizot, their officers, managers and directors, and the attorneys retained by them for any liability to any person, creditor, or equity interest holder related to the Bankruptcy Case, the Plan or the associated disclosure statement, except for gross negligence or willful misconduct is effective upon confirmation of the Plan. The Chuza Parties release and forever discharge the Guizot Parties and their listed representatives, agents, attorneys, predecessors, successors and assigns from any and all claims and demands of any kind, whether known or unknown, fixed or contingent, that it ever had, now has, or can have from the beginning of time to the date of Plan Confirmation. The Guizot Parties release and forever discharge the Chuza Parties and their listed representatives, agents, attorneys, predecessors, successors and assigns from any and all claims and demands of any kind, whether known or unknown, fixed or contingent, that it ever had, now has, or can have from the beginning of time to the date of Plan Confirmation.
The Debtor, the UCC, the Chuza Parties, the Guizot Parties, the Reorganized Debtor, and all of their respective present and former partners, members, officers, directors, employees, advisors, attorneys, insiders, and agents (collectively the "Released Parties") shall not have or incur any liability to any holder of a claim or an interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or affiliates, or any of their successors or assigns for any act or omission in connection with, relating to or arising out of this Chapter 11 Case, any settlement related to this Chapter 11 Case, the negotiation and execution of a proposed Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Estate or of the Plan, issuance and distribution of any securities issued or to be issued pursuant to the Plan, or the property to be distributed under the Plan, except only to the extent that liability is based on willful misconduct.

10.11 Exculpation. Except as otherwise expressly provided in this Plan, entry of the Confirmation Order will permanently enjoin all persons or parties who have held, hold, or may hold claims or interests on or after the Effective Date from pursuing any claims against Chuza, Chuza Parties, Guizot, the Committee, their officers, managers and directors, experts, and the attorneys retained by them for any liability to any person, creditor, or equity interest holder related to the Bankruptcy Case, the Plan or the associated disclosure statement, except for gross negligence or willful misconduct.

10.12 Guizot, LLC tax consequences. Guizot is granted 100% of the intangible drilling costs related to Wells 73 and 74. The Debtor shall not assert any right to the intangible drilling costs, and may not challenge Guizot's right to assert the costs. The Debtor does not guarantee that Guizot will receive the benefit of the intangible drilling costs in the event of any challenge by any taxing authority. No other document shall be necessary for Guizot to apply intangible drilling costs to its Taxes.

DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION 18

Respectfully submitted,

CHUZA OIL COMPANY

By: _____
Robert Goldstein, CEO


WILLIAM F. DAVIS & ASSOC., P.C.

By: _____
William F. Davis, Esq.
6709 Academy NE, Suite A
Albuquerque NM 87109
Telephone: (505) 243-6129
Fax: (505) 247-3185
*Attorneys for Debtor/Plan Proponent*